William M. STOKES, Jr., Appellant,

v.

Robert D. ADAIR, Appellee.

No. 7805.

United States Court of Appeals
Fourth Circuit.

Argued March 16, 1959.

Decided April 8, 1959

* United States District Judge for the Southern District of California, sitting by designation.

George E. Allen, Richmond, Va. (Frank C. Maloney, III, and Allen, Allen, Allen & Allen, Richmond, Va., on brief), for appellant.

G. Kenneth Miller, Richmond, Va. (John G. May, Jr., Richmond, Va., on brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and STANLEY, District Judge.

SOPER, Circuit Judge.

This case raises the question whether the United States District Court in Richmond, Virginia, has jurisdiction of a suit brought by a citizen of the state to recover damages from another citizen of the state for injuries suffered by the plaintiff on the United States Military Reservation of Fort Leavenworth in the State of Kansas, when he was thrown violently against the windshield of an automobile driven by the defendant in what is alleged to have been a reckless and grossly negligent manner. Jurisdiction is claimed under 28 U.S.C. § 1331, which gives the district courts "original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3000, exclusive of interests and costs, and arises under the Constitution, laws or treaties of the United States."

The District Judge granted a motion of the defendant to dismiss the complaint for lack of jurisdiction on the grounds that there was no diversity of citizenship and no question arising under the Constitution and laws of the United States. He relied on the decisions of the Supreme Court in Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264, and Chicago, R. I. & P. Ry. Co. v. McGlinn, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270, in which decisions of the Su-

preme Court of Kansas were affirmed. In the first case the Supreme Court of the United States held that the State of Kansas, in the act of the state legislature which granted exclusive jurisdiction over the Fort Leavenworth Reservation to the United States, had validly reserved the right to tax railroad property in the area; and in the second case the Supreme Court of the United States held that a state act of Kansas, which gave the owners of animals killed by railroad engines or cars the right to recover damages from the railroad company, remained in effect after the Act of Cession was passed. The District Judge being of the opinion that these cases established that the rights of the parties in the pending case were governed by laws of Kansas, dismissed the complaint.

We learn from these decisions of the Supreme Court that the land on which the Reservation is located was part of the territory acquired by the United States from France in 1803 and had been used by the United States for military purposes for many years before the State of Kansas was admitted into the Union in 1861; and that at the time of the admission Congress failed, as it might have done, to except the place from the jurisdiction of Kansas and to reserve jurisdiction over it. This defect was cured in 1875 by an act of the state legislature, wherein exclusive jurisdiction over the territory within the Reservation was ceded to the United States, saving however to the state the right to serve civil and criminal processes and the right to tax railroad property therein. Since the land was not purchased with the consent of Congress it was held in Fort Leavenworth R. Co. v. Lowe, supra, that the case did not fall within the purview of Article 1, Section 8, Clause 17 of the Federal Constitution, which provides that Congress shall have power to exercise exclusive jurisdiction over all places purchased by the consent of the legislature of the state in which the same shall be for the erection of forts and other needful buildings. Since the territory was acquired without consent of the state, the

Court held that jurisdiction over the area was not determined by the Federal Constitution but by the state act of cession and that the limitations contained therein, having been accepted by the United States, were valid and enforceable. Later, in Chicago, R. I. & P. R. Co. v. McGlinn, supra, the question arose as to what laws regulated the private rights of persons in the ceded area after the cession, and it was held that the laws of Kansas continued in force until abrogated by the new sovereign. It is because of this holding that it is now contended that the right of action which the plaintiff seeks to prosecute in the pending suit is founded on the laws of the State of Kansas and not the laws of the United States.

This conclusion is at variance with decisions rendered by the courts subsequent to the two Leavenworth decisions above discussed. By later opinions it has become clear that although the laws of the states governing the private rights of individuals persist in the ceded territories, they do not derive their authority from the state but from the Federal Government which has acquired exclusive legislative jurisdiction. In effect, the acceptance of jurisdiction over the ceded territory is tantamount to an adoption of the existing state laws by the Federal Government. Thus, in Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, the Court had under consideration an appeal from a judgment of a court of appeals of New York which had sustained a judgment for damages for accidental death on the site of the United States Post Office in New York which the United States had purchased with the consent of the state. The New York court had held that the state statute requiring the protection of places of work remained in effect after the cession and justified an award of damages to the decedent's estate. The Supreme Court of the United States in reviewing this decision stated 309 U.S. at page 97, 60 S.Ct. at page 433, that the issue of law involved was whether an existing provision of a state statute remains effective *as a*

*statute of the United States* applicable to the ceded territory after the Federal Government has acquired exclusive jurisdiction thereover; and the Court held that the state statute "continues as a part of the laws of the federal territory." The Court said 309 U.S. at pages 99–100, 60 S.Ct. at pages 433, 434:

"It is now settled that the jurisdiction acquired from a state by the United States whether by consent to the purchase or by cession may be qualified in accordance with agreements reached by the respective governments. The Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory transferred. This assures that no area however small will be left without a developed legal system for private rights. In Chicago, R. I. & P. R. Co. v. McGlinn, supra, a Kansas statute relating to recovery against a railroad for the injury to livestock on its right of way existed at the time of the cession to the United States of exclusive jurisdiction over Fort Leavenworth Military Reservation. It was held that the statute was carried over into the law covering the Reservation. Conversely, in Arlington Hotel Co. v. Fant, [278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447] supra, an Arkansas statute relieving innkeepers, passed after cession of Hot Springs Reservation, was held unavailing as a defense to a Reservation innkeeper's common-law liability in accordance with Arkansas law before the cession. Such holdings assimilate *the laws of the federal territory*, where the Congress has not legislated otherwise, to the laws of the surrounding state."

██ It is clear from these decisions that after the cession of jurisdiction to the United States the laws of the state not inconsistent with the transfer are still vital to fix the private rights of persons in the ceded area; but that they lose their character as laws of the state and become laws of the Union, and this transformation is implicit in the transfer of legislative jurisdiction without express act of Congress. It is also clear that only the state laws in effect at the time of the transfer of jurisdiction continue in effect and that subsequent statutes of the state are not part of the laws of the ceded area unless Congress takes action to keep them current. This has been done in certain fields of the law. Thus, by the Act of Congress of February 1, 1928, 16 U.S.C.A. § 457, express provision was made that in actions for death or personal injury in places subject to the exclusive jurisdiction of the United States, the rights of the parties shall be governed by the laws of the state within whose exterior boundaries the wrong occurs. Likewise in the field of criminal law Congress for many years passed a series of assimilative crime acts by which the criminal laws of a state and the penalties thereby imposed were expressly taken over and incorporated in the federal system as laws of the United States applicable to areas in which exclusive jurisdiction had been ceded to the United States, but it was recognized that such statutes related only to such criminal laws as were in effect at the time of the cession and repeated acts were necessary to keep the federal laws current with the laws of the state. Finally Congress passed the Assimilative Crimes Act of 1948, 18 U.S.C. § 13. This provides that persons guilty of acts or omissions in ceded territory which, although not made punishable by an act of Congress, would be punishable under state law if the act or omission occurred in the surrounding state, shall be guilty of a like offense and subject to a like punishment. This statute was held constitutional in United States v. Sharpnack, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed. 2d 282.

██ We are of the opinion that the District Court had jurisdiction of the

pending case both under the general rule of law applicable when exclusive jurisdiction over territory is ceded by a state to the United States, and also under the express provisions of the act of February 1, 1928, 16 U.S.C.A. § 457. The decisions of the courts of appeal are in accord. See Capetola v. Barkley White Co., 3 Cir., 139 F.2d 556, 153 A.L.R. 1046; Mater v. Holley, 5 Cir., 200 F.2d 123.

This decision does not mean that an action for personal injuries inflicted on a federal reservation may not be tried in a state court. On the contrary it is settled that actions for personal injuries being transitory in nature may be brought in any jurisdiction in which the defendant may be impleaded. Ohio River Contract Co. v. Gordon, 244 U.S. 68, 72, 37 S.Ct. 599, 61 L.Ed. 997; Mater v. Holley, supra.

The judgment of the District Court is reversed and the case remanded for further proceedings.

Reversed and remanded.