**BOARD OF SUPERVISORS OF FAIR-FAX COUNTY, VIRGINIA, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

Civ. A. No. 75–392–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Jan. 23, 1976.

558

Myra H. Barron, Asst. County Atty., Fairfax, Va., for plaintiff.

Richard B. Kabat, Asst. Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

The Board of Supervisors of Fairfax County, Virginia, bring this action seeking damages and injunctive relief for injuries resulting from the operation of an alleged public nuisance at Lorton, Virginia. Plaintiff alleges that (1) the District of Columbia and certain of its officials have failed to maintain and operate the Lorton Reformatory in a manner required by law; (2) that this improper maintenance causes the facility to be a public nuisance; and (3) that the Attorney General has no authority to designate as a suitable place of confinement, a facility which is a public nuisance. Defendants include the District of Columbia and certain of its officials, the United States of America and the Attorney General of the United States. The matter is before the Court on defendants' motion to dismiss, plaintiff's response thereto, and argument of counsel.

The Lorton Complex itself is a prison facility maintained and operated by the District of Columbia. The complex is situated on approximately 3000 acres of land located in Fairfax County, Virginia. The United States retains legal title to the land upon which the prison is located having acquired the land in several parcels beginning in 1910. Persons convicted in the courts of the District of Columbia for any offense are committed to the custody of the Attorney General whose responsibility is to select a place of confinement for the prisoner. D.C.Code § 24–425 (1973 ed.). The Lorton Complex is one such place of confinement.

Count I of the complaint alleges that due to the number and increasing frequency of escapes, riots and disturbances, the Lorton Complex constitutes a public nuisance. Plaintiff alleges numerous escapes, fires, and kidnappings to support this claim. The breaches of security and the resulting threat to the health and safety of the surrounding community allegedly stems from the negligent conduct of the District of Columbia defendants in maintaining the facility. The Lorton Complex, so it is argued, is a public nuisance, and the Attorney General must be enjoined from designating it as a suitable place of confinement.

Count II contends that the operation of the Lorton Complex deprives the inhabitants of Fairfax County of several rights secured under the Constitution of the United States. Plaintiff further asserts in Count III that water and waste water treatment plants, the coal dust run-off from the coal-fired boilers and gases emitted from the Lorton Complex has and continues to pollute the air and waters of Fairfax County in violation of the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321 et seq., 4332(C)(i), and the Water Pollution Control Act, 33 U.S.C. § 1251 et seq., and the Clean Air Act, 42 U.S.C. § 1857 et seq. Plaintiff, in Count IV, seeks compensation for services provided by the county to the Lorton Complex. All defendants maintain that sovereign immunity precludes this action, that the Court does not have jurisdiction over the subject matter or in the alternative, that plaintiffs have failed to state a claim upon which relief can be granted, and that plaintiffs lack standing to maintain this suit.

██ Defendants' position is that sovereign immunity precludes this action with regard to the District of Columbia and the named defendants. Despite recurring criticism [1] it remains the law that the sovereign need not be subjected

1. E. g., K. Davis, Administrative Law Treatise ch. 27 (Supp. 1965); Cramton, Nonstatutory Review of Federal Administrative Action: The Need for Statutory Reform of Sovereign Immunity; Subject Matter Jurisdiction, and Parties Defendant, 68 Mich.L.Rev. 389 (1970); Scalia, Sovereign Immunity and Nonstatutory Review of Federal Administrative Action: Some Conclusions from the Public-Lands Cases, 68 Mich.L.Rev. 867 (1970); Currie, The Federal Courts and the American Law Institute (pt. II), 36 U.Chi.L.Rev. 268 (1969); Byse, Proposed Reforms in Federal 'Nonstatutory' Judicial Review: Sovereign Immunity, Indispensable Parties Mandamus, 75 Harv.L.Rev. 1479 (1962).

to unconsented suits. *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Malone v. Bowdin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948). A suit is one against the sovereign if the judgment expends itself on the public treasury, interferes with the public administration, or if the effect of the judgment would restrain the government from acting or compel it to act. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Beginning with *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), exceptions to the applicability of sovereign immunity were recognized. It is now settled that the doctrine does not apply to suits against government officials who act beyond their statutory authorization, or where the statute conferring their authority is unconstitutional. *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1948); *Dugan v. Rank,* 372 U.S. 609, 620–21, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). A declaration that the Lorton Reformatory is a public nuisance could indeed have a major impact on the public administration of the unit and could affect all the defendants in their official capacities. Therefore, the suit is barred by the doctrine of sovereign immunity unless encompassed by either of the *Larson* exceptions, or is otherwise consented to by the respective governments. *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947).

Plaintiff does not challenge the constitutionality of the statutes under which the Attorney General confines persons to Lorton,[2] or the statute under which the District of Columbia maintains and operates the facility.[3] Rather, plaintiff asserts that the Lorton Complex is being maintained in a manner not authorized by statute and one which is constitutionally void. Neither title to the property nor the right to locate a prison on that property is challenged. Cf. *Ely v. Velde,* 451 F.2d 1130 (4th Cir. 1971); *Ferris v. Wilbur,* 27 F.2d 262 (4th Cir. 1928).

■ This case, then, is unlike *Ferris v. Wilbur,* 27 F.2d 262 (4th Cir. 1928) where the Court refused to enjoin the use of

---

**2.** D.C.Code § 24–425 (1973 ed.) provides:

All prisoners convicted in the District of Columbia for any offense, including violations of municipal regulations and ordinances and Acts of Congress in the nature of municipal regulations and ordinances, shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.

Plaintiff does contend that the Attorney General is acting beyond the authority conferred by the statute in designating a prison run in such a manner as to constitute a public nuisance.

**3.** D.C.Code § 24–442 (1973 ed.) provides:

Said Department of Corrections under the general direction and supervision of the Commissioner of the District of Columbia shall have charge of the management and regulation of the Workhouse at Occoquan in the State of Virginia, the Reformatory at Lorton in the State of Virginia, and the Washington Asylum and Jail, and be responsible for the safekeeping, care, protection, instruction, and discipline of all persons committed to such institutions. The District of Columbia Council shall have power to promulgate rules and regulations for the government of such institutions and the Department of Corrections with the approval of the Commissioner shall have power to establish and conduct industries, farms, and other activities, to classify the inmates, and to provide for their proper treatment, care, rehabilitation, and reformation.

The cost of maintaining the Lorton facility lies with the District of Columbia. D.C.Code § 24–422 (1973 ed.). The United States, in fact, is entitled to reimbursement for funds expended on the Lorton Complex. D.C.Code § 24–423 (1973 ed.).

certain land as a munition depot. In *Wilbur,* it was the *location* of an activity that was drawn in issue and not the *manner* in which the activity was pursued. Indeed, the Court in *Wilbur* recognized that "[w]here the act complained of is not authorized by statute, . . . the person attempting it may be restrained in a proper case, notwithstanding his claim that he is acting in his official capacity." *Ferris v. Wilbur,* 27 F.2d 262, 264 (4th Cir. 1928). A similar controversy was litigated in *Knox Hill Tenant Council v. Washington,* 145 U.S. App.D.C. 122, 448 F.2d 1045 (1971) where tenants challenged the manner in which a housing project was being maintained. The housing project, as is Lorton, was operated and maintained by the District of Columbia while legal title remained vested in the United States. The plaintiffs in *Knox Hill,* as in the instant case, alleged that government officials were maintaining the project in a manner violative of the statute that authorized the existence of the facility. In rejecting the plea of sovereign immunity, the Court said:

> There is nothing new about judicial entertainment of suits which charge that federal officials are acting outside of, or in conflict with, the responsibilities laid upon them by the Congress or the Constitution. Whether such charges are true, and, if so, what remedial action the court should or may direct, are questions partaking of the merits, and not of jurisdiction to explore the merits.
>
> If, after trial, it be found that appellees do in fact have a responsibility for the property in their care which they are not recognizing adequately, the court's power, at the least, to declare that responsibility and to define that default is not dissipated solely by the circumstance that legal title to the property is in the United States. To hold otherwise would be to say that sovereign immunity forecloses any judicial inquiry whatsoever into the cus-

todianship by a federal official of federal property. There is no magic about real estate, or its ownership by the United States, which hedges it guardians about with an immunity not available to other executants of public policies committed to their care by the Congress.

*Knox Hill Tenant Council v. Washington,* 145 U.S.App.D.C. 122, 448 F.2d 1045, 1052–53 (1971). Judge McGowan's reasoning in *Knox Hill* is persuasive and dispositive of the sovereign immunity claim.

The District of Columbia, as have other municipalities, has been unable to successfully maintain refuge behind the shield of sovereign immunity to avoid liability for maintaining an alleged public nuisance. *George Washington Inn v. Consolidated Engineering Co.,* 64 U.S. App.D.C. 138, 75 F.2d 657, 659 (1935). See generally, 18 E. McQuillin, Municipal Corporations § 53.49 (3rd ed. 1963). Indeed, the District of Columbia has heretofore been held liable for maintaining a public nuisance at the Lorton facility. *District of Columbia v. Totten,* 55 U.S. App.D.C. 312, 5 F.2d 374 (1925). Should the plaintiff prove that the Lorton Complex is in fact a public nuisance, then it would not be a 'suitable' place of confinement for persons convicted of crimes in the District of Columbia courts. D.C. Code § 24–425 (1973 ed.). The Attorney General in that event could properly be enjoined from exceeding his statutory authority in so designating the Lorton Reformatory. With regard to the District of Columbia and the individual defendants, sovereign immunity is no bar to this action. The county also named the United States as a defendant. As discussed below, the statutory waivers of sovereign immunity cited by plaintiff are inapplicable to the present action and therefore defendants' motion to dismiss as to the United States is well taken and will be granted.

Jurisdiction over the claim contained in Count III is arguably attained

pursuant to 28 U.S.C. § 1331(a).[4] The action arises under the federal common law of nuisance. The Board of Supervisors alleges that activities at the Lorton Complex are polluting the air and waters of Fairfax County. Plaintiff has not alleged that it has complied with the administrative requisites for an action under either the Water Pollution Control Act or the Clean Air Act.[5] Nor does plaintiff allege violation of any state or local ordinance. Consequently, the Board of Supervisors relies on a common law action specifically left open by the terms of the federal statutes. 33 U.S.C. § 1365; 42 U.S.C. § 1857h–2(e). The Supreme Court has held that the law to be applied in common law actions to abate pollution is federal law. *Illinois v. City of Milwaukee,* 406 U.S. 91, 105, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).[6] The scope of this federal common law action has not yet been fully explored. The Court left open the question of whether federal statutory regulation of the field pre-empted the common law action. Counsel have not addressed themselves to this point. The Court in *Illinois* and subsequent cases described the action in terms of interstate or navigable waters. *See Vermont v. New York,* 417 U.S. 270, 275 n. 5, 94 S.Ct. 2248, 41 L.Ed.2d 61 (1975); *Illinois v. City of Milwaukee,* 406

U.S. 91, 104, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); *Washington v. General Motors Corp.,* 406 U.S. 109, 112 n. 2, 92 S.Ct. 1396, 31 L.Ed.2d 727 (1972). The lower courts have expressly or impliedly restricted the common law action to instances involving interstate waters. *See Reserve Mine Co. v. EPA,* 514 F.2d 492, 520 (8th Cir. 1975); *Stream Pollution Control Bd. of Indiana v. U. S. Steel Corp.,* 512 F.2d 1036, 1040 (7th Cir. 1975); *Michie v. Great Lakes Steel Division,* 495 F.2d 213, 216 n. 2 (6th Cir. 1974). Plaintiff's complaint is silent concerning the interstate nature of the alleged pollution. While the substantive standards to be applied in these actions have not been firmly established, the Supreme Court suggested that lower courts look to the various federal environmental protection statutes as guidelines. *Illinois v. City of Milwaukee,* 406 U.S. 91, 103 n. 5, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Plaintiff will therefore be afforded an opportunity, if it be so advised, to amend its complaint relating to the interstate nature of the pollution and specific violation, if any, of any relevant federal statutory standard. Suffice it to say that at this point in the litigation, plaintiff has survived a Rule 12(b) challenge with regard to Count III of the complaint.[7]

**4.** 28 U.S.C. § 1331(a) provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

**5.** 33 U.S.C. § 1365(b) and 42 U.S.C. § 1857h–2(b) respectively. Both statutes require a plaintiff to give the Environmental Protection Agency sixty days notice prior to instituting a citizens' suit.

**6.** The Court also found that "[t]he considerable interests involved in the purity of interstate waters would seem to put beyond question the jurisdictional amount provided in § 1331(a)." *Illinois v. City of Milwaukee,* 406 U.S. 91, 98, 92 S.Ct. 1385, 1390 (1972). This language is dispositive of defendants' assertion that plaintiff's claim is for less than the jurisdictional amount.

**7.** Plaintiff also seeks to enjoin the expenditure of federal funds on Lorton until an environ-

mental impact statement is filed pursuant to § 102(C) of the National Environmental Policy Act (NEPA); 42 U.S.C. § 4332(C). While the retroactive application of § 102(C) remains an unresolved issue, there is undoubtedly a state of progress where federal action is so complete as to render § 102(C) of NEPA inapplicable. *Arlington Coalition on Transportation v. Volpe,* 458 F.2d 1323, 1331 (4th Cir. 1972). Construction of the prison itself was completed long before the effective date of NEPA. Thus, federal involvement with the Lorton Reformatory has since passed that stage where an impact statement is required. *Cf. Pennsylvania Environmental Council, Inc. v. Bartlett,* 454 F.2d 613, 624 (3rd Cir. 1971); *San Francisco Tomorrow v. Romney,* 472 F.2d 1021, 1025 (9th Cir. 1973); *Jicarilla Apache Tribe of Indians v. Morton,* 471 F.2d 1275, 1279 n. 7 (9th Cir. 1971). Indeed, this Court has previously ruled that an environmental impact statement under NEPA was not required for activity on the Lorton Complex. *Lorton Area Citizen's Action Committee v. Washington,* No. 230–72–A (E.D.Va. June 9, 1972).

■ Plaintiff also contends that the security of the institution and its effect on the surrounding community renders the Lorton Complex a public nuisance. It is not submitted that this count arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2674, or the District of Columbia equivalent, D.C.Code § 1–902 (1973 ed.). This is undoubtedly due to the Supreme Court's statement that the doctrine of nuisance cannot be used as a means of imposing liability without fault under the Torts Claims Act. *Dalehite v. United States,* 346 U.S. 15, 45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Cf. *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972). Plaintiff further has not advanced any general federal common law basis for this action. Rather, the county asserts that the action arises under a 'federalized' common law of public nuisance.[8] The essence of this claim is that (1) once jurisdiction over land is ceded to the federal government, federal law governs all actions relating to the land; (2) unless and until Congress passes legislation relating to the property, state law in existence at the time of cession is assimilated into the federal common law governing the enclave; (3) and the law of public nuisance was established in Virginia at the time of the federal acquisition of the Lorton Complex. While the above propositions of law are essentially correct, there are factual difficulties in their application to instant case.

■ Congress is constitutionally authorized to exercise exclusive jurisdiction over all places purchased from or ceded by a particular state with the consent of that state's legislature. U.S.Const. art. 1, § 8, cl. 17.[9] Land so acquired is subject to the exclusive jurisdiction of the federal government. *Paul v. United States,* 371 U.S. 245, 264, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Stewart & Co. v. Sadrakula,* 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940). However, "[t]he Constitution does not command that every vestige of the laws of the former sovereignty must vanish. On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which governs the rights of the occupants of the territory transferred." *Stewart & Co. v. Sadrakula,* 309 U.S. 96, 99–100, 60 S.Ct. 431, 433 (1940). *Accord, Arlington Hotel Co. v. Fant,* 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447 (1929); *Chicago, R. I. & P. Ry. Co. v. McGlinn,* 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270 (1885); *Stokes v. Adair,* 265 F.2d 662 (4th Cir.), cert. denied, 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959); *Capetola v. Barclay White Co.,* 139 F.2d 556 (3d Cir. 1943). This line of cases holds that the applicable state law "lose their character as law of the state and become laws of the Union" for purposes of § 1331(a) jurisdiction. *Stokes v. Adair,* 265 F.2d 662, 665 (4th Cir. 1959). This 'federalized' state law is needed in such instances to prevent the formation of a hiatus in the legal system of the federal enclave. The doctrine recognized in *Stewart & Co. v. Sadrakula,* supra, is designed for situations where controversies arise in federal enclaves but a state forum was precluded by Art.

---

8. The Board of Supervisors allege that the defendants are acting beyond their statutory authority. The statutes in this instance are provisions of the Code of the District of Columbia. 28 U.S.C. § 1363 precludes reliance on these codes sections as a source of federal question jurisdiction. That section provides "For the purposes of this chapter, references to laws of the United States or Acts of Congress do not include laws applicable exclusively to the District of Columbia."

9. Article I, § 8, cl. 17 of the Constitution of the United States provides:

To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

564

I § 8 cl. 17 and federal court jurisdiction over the subject matter had not been established. *See Stewart & Co. v. Sadrakula,* 309 U.S. 94, 100, 60 S.Ct. 431, 84 L.Ed. 596 (1940); *Stokes v. Adair,* 265 F.2d 662, 665 (4th Cir.), cert. denied, 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959). The common law of public nuisance is well developed in Virginia and antedates the federal acquisition of the Lorton facilities. *See Jerremy Imp. Co. v. Commonwealth,* 106 Va. 482, 56 S.E. 224 (1907); *Commonwealth v. Webb,* 6 Rand. 726 (Va.1828). Thus, under the proper set of facts, plaintiff's claim would be cognizable in this Court.

 The initial difficulty in applying the preceding analysis to the instant case is that the federal government does not have exclusive jurisdiction over all the land in question. When a state refuses to consent to federal acquisition of territory, it retains jurisdiction over the land consistent with the governmental purposes for which the property was acquired. *Paul v. United States,* 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *Fort Leavenworth R. R. Co. v. Lowe,* 114 U.S. 525, 527, 5 S.Ct. 995, 29 L.Ed. 264 (1885). Similarly, a state may qualify its cession by reserving concurrent jurisdiction over the land. *James v. Dravo Construction Co.,* 302 U.S. 134, 147, 58 S.Ct. 208, 82 L.Ed. 155 (1937); *Silas Mason Co. v. Tax Comm'n.,* 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187 (1937); *United States v. Going,* 504 U.S. 809, 811 n. 5 (8th Cir. 1974). Where concurrent state jurisdiction is retained, litigants are afforded a forum with a developed legal system in which to resolve disputes, and the rationale behind applying 'federalized' state law is no longer compelling. Virginia has retained concurrent jurisdiction over federally acquired property since 1919. *See* Code of Virginia 1919, § 19; Code of Virginia 1950, § 7.1–13.[10] The rare instances in which the federalized state law concept has been invoked have involved enclaves subject to exclusive federal jurisdiction. See, e. g., *Stewart & Co. v. Sadrakula,* 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940); *Stokes v. Adair,* 265 F.2d 662 (4th Cir.), cert. denied, 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959).

 Secondly, the *Stokes* case mandates that only those state laws in effect at the time of transfer of jurisdiction continue in effect. Subsequent developments in state law are not part of the laws of the ceded areas unless Congress takes action to keep them current. *Stokes v. Adair,* 265 F.2d 662, 665 (4th Cir. 1954); *Capetola v. Barclay White Co.,* 139 F.2d 556 (3d Cir. 1943). The case at bar involves ten parcels of land acquired over a period exceeding thirty years. The application of state law as it existed at the time of federal acquisition could require the irrational application of different law to the various components of a single prison complex.

 This Court finds no reason in law or logic that compels the application of state substantive standards to this case and deem that law to be federal for purposes of § 1331(a) jurisdiction. An action to abate a public nuisance is essentially one that arises under local law.

10. Virginia had earlier consented to exclusive federal jurisdiction over lands acquired by the United States under Art. I, § 8, cl. 17 of the Constitution. *See* Acts of Assembly 1901–1902, ch. 484, pp. 565–66 as amended in Acts of Assembly 1912, ch. 260, p. 563; Acts of Assembly 1916, ch. 471, p. 793 and Acts of Assembly 1918, ch. 382, p. 568. This arrangement gave way to a reservation of concurrent jurisdiction in the Code of Virginia 1919, § 19. This latter Code section, however, was made specifically inapplicable to territory ceded under the earlier statutes. As two parcels of the Lorton Complex were acquired prior to 1919 it is arguable that the federal government retains exclusive jurisdiction over these parcels. The United States, however, is merely the titleholder to this land. The powers of government over the area are exercised by the district of Columbia. *See* D.C.Code § 24–442 (1973 ed.) quoted in full *supra* note 3. *See also* Act of March 9, 1909, ch. 250, 35 Stat. 717–18 and Act of August 5, 1909, ch. 7, 36 Stat. 122. Hence, there is no need to invoke the federalized state law concept as there exists an applicable body of law arising from the District of Columbia.

In this instance, it is cognizable not only in Virginia state courts, but also in the Courts of the District of Columbia as well. *See George Washington Inn v. Consolidated Engineering Co.,* 64 U.S. App.D.C. 138, 75 F.2d 657, 659 (1935); *District of Columbia v. Totten,* 55 U.S. App.D.C. 312, 5 F.2d 374, 376 (1975). As plaintiff offers no jurisdictional basis for this count other than § 1331(a), the Court must now determine whether the doctrine of pendent jurisdiction may possibly be invoked.[11]

■ There is no question but that the Court has power to adjudicate a state claim related to a substantial federal claim in the same suit. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The exercise of pendent jurisdiction, however, is largely discretionary. *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Reamer v. United States,* 459 F.2d 709 (4th Cir. 1972). This action arises from the common nucleus of operative facts stemming from the operation of the Reformatory. Plaintiff would undoubtedly prefer to pursue both the federal and state nuisance claims in a single action. These factors weigh in favor of exercising pendent jurisdiction. On the other hand, the allegations contained in plaintiff's complaint as it now stands indicates that the state law question will substantially predominate over the federal claim. Moreover, the proofs to be offered in support of these claims will be substantially different. The federal claim involves technical standards of environmental purity while the state law claim concerns only the internal security procedures utilized by the prison. As heretofore discussed, it is not entirely certain that plaintiff will be able to bring the federal action at all. Since the state law action may be dismissed without prejudice at any time prior to trial, this Court will postpone ruling on whether pendent jurisdiction should be exercised in the instant case until the views of counsel can be obtained.

■ The Board of Supervisors also attempts to redress the alleged deprivation of the constitutional rights of the inhabitants of Fairfax County. The gist of this count is that various constitutional rights of local residents are impaired by the operation of the Lorton Complex.[12] Plaintiff is frank to concede that it has no proprietary interest in the constitutional rights of the residents of Fairfax County. Consequently plaintiff does not have a sufficient stake in this aspect of the suit to insure the requisite adversity in presenting this action. Cf. *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1971).

---

11. Plaintiff in its memorandum asserts that jurisdiction may be attained pursuant to the Administrative Procedure Act, (APA) 5 U.S.C. § 706. An overwhelming number of courts have held that the APA *does not extend* jurisdiction to cases not otherwise within the competency of the district court. See, e. g., *Getty Oil Co. v. Ruckelshaus,* 467 F.2d 349, 356 (3d Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973); *Pan American World Airways, Inc. v. C. A. B.,* 129 U.S.App. D.C. 159, 392 F.2d 483 (1968); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529, 532 (8th Cir. 1967); *Bramblett v. Desorby,* 490 F.2d 405 (6th Cir. 1974); *Opelika Nursing Home, Inc. v. Richardson,* 356 F.Supp. 1338 (M.D.Ala.1973), aff'd, 490 F.2d 841 (5th Cir. 1974); *International Federation of Professional and Technical Engineers v. Williams,* 389 F.Supp. 287 (E.D.Va. 1974), aff'd without opinion, 510 F.2d 966 (4th Cir. 1975). Moreover, plaintiff has failed to allege any exhaustion of administrative remedies. Cf. *Brown v. Schlesinger,* 365 F.Supp. 1204, 1207 n. 1 (E.D.Va.1973).

12. In its Complaint, plaintiff asserts:

Defendant's acts or failure to act, and the public nuisance caused thereby, have deprived the inhabitants of Fairfax County of rights guaranteed to them by the Constitution of the United States of America, to wit:
a. Their freedom to associate has been severely curtailed;
b. Their freedom to travel has been severely restricted;
c. Their right to remain secure in and enjoy the possession and benefits of their homes has been abridged;
d. Their right to privacy has been invaded;
e. Their right to be free in their homes from unreasonable searches has been frequently violated.

A plaintiff that has no interest of its own at stake always lacks standing to maintain the suit. K. Davis, Administrative Law Text, 428–29 (3d ed. 1972) cited with approval in *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n. 4, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Plaintiff asserts, nonetheless, that it has standing in its capacity as *parens patriae*.

 The concept of *parens patriae* has its historical origins in the English constitutional system and the power of the King as sovereign. *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). In the United States, the " '*parens patriae*' function of the King passed to the States." Id. at 257, 92 S.Ct. at 889. The term literally means 'parent of the country' and traditionally refers to the role of the state as sovereign and guardian of persons under its protection. *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079 (2d Cir.), cert. denied sub nom. *Colter Drugs, Inc. v. Chas. Pfizer & Co.*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). Thus, the concept of *parens patriae* is closely linked to that of sovereignty and has been most frequently applied where a state seeks to prevent or repair harm to its quasi-sovereign interests. *Hawaii v. Standard Oil Co.*, 405 U.S. at 258, 92 S.Ct. 885 (1972) and cases cited therein. Fairfax County, however, is not a sovereign, but rather a political subdivision whose powers are derivative of the sovereign State of Virginia. Virginia Constitution, Art. VII, § 2.[13]

The only court to rule directly on this issue squarely held that a political subdi-

vision's lack of sovereignty precluded its ability to act as *parens patriae*. *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 131 (9th Cir.), cert. denied sub nom. *Morgan v. Automobile Manufacturer's Ass'n., Inc.*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). This conclusion appears eminently reasonable in light of the state's ability to protect its citizens from wrongs inflicted by an outside government. See, *North Dakota v. Minnesota*, 263 U.S. 365, 44 S.Ct. 138, 68 L.Ed. 342 (1923); *Pennsylvania v. West Virginia*, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923); *New York v. New Jersey*, 256 U.S. 296, 41 S.Ct. 492, 65 L.Ed. 937 (1921). Indeed, the State of Virginia has interceded in earlier disputes between Fairfax County residents and Lorton officials. See *Commonwealth of Virginia v. District of Columbia*, No. 28328 (at law), Circuit Court of Fairfax County.

 Even if the Board of Supervisors could properly act as *parens patriae* in some instances, it could not do so to redress the constitutional torts alleged in the instant case. If the Lorton Complex is in fact operating so as to deprive Fairfax County residents of certain constitutional rights, the injury would be personal to those residents so effected rather than to any quasi-sovereign interest of the county itself. While the Board of Supervisors is statutorily empowered to abate public nuisances, it is not authorized to redress injuries of a personal nature inflicted upon its residents.[14] Were it otherwise, the county would be forced to run the risk of discriminating between residents in decid-

---

**13.** Virginia Constitution, Art. VII § 2 provides in pertinent part:

 The General Assembly shall provide by general law for the organization, government, powers, change of boundaries, consolidation, and dissolution of counties, cities, towns, and regional governments. The General Assembly may also provide by general law optional plans of government for counties, cities, or towns to be effective if approved by a majority vote of the qualified voters voting on any such plan in any such county, city or town.

**14.** Va.Code § 15.1–522 (1975 Supp.) confers upon the Board of Supervisors the same powers and authority as those vested in the councils of cities and towns. These latter bodies are authorized to "prevent injury or annoyance from anything dangerous, offensive or unhealthy and cause any nuisance to be abated;" Va.Code § 15.1–14(5) (1975 Supp.). To be considered public a nuisance must effect an interest common to the general public rather than peculiar to one individual. See generally, W. Prosser, The Law of Torts § 88 (4th ed. 1971). A wrong to a specific individual, however, may be remedied by an action instituted by that individual.

ing which actions to bring. Such, obviously, is not the case. For the above stated reasons, this Court is unwilling to hold that a political subdivision may litigate constitutional issues in which it has no stake.

Count IV of the complaint relates to the police, fire and rescue services which Fairfax County has provided the Lorton Complex. The County seeks recovery of the value of such services. Jurisdiction over this claim with regard to the federal defendants is claimed under the Tucker Act, 28 U.S.C. § 1346(a)(2).[15] The Tucker Act is only applicable to actions seeking money damages. *Richardson v. Morris,* 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). Moreover, it is an inappropriate basis for jurisdiction over actions sounding in tort. *Tempel v. United States,* 248 U.S. 121, 131, 39 S.Ct. 56, 63 L.Ed. 162 (1918); *Kendrick v. United States,* 73 F.Supp. 618 (E.D.Va.1947). To the extent that the claim for services provided constitutes an element of damages of the tort (nuisance) claims, the Tucker Act may not be invoked to provide jurisdiction. Plaintiff's complaint, however, may be fairly read as raising a contractual basis for reimbursement. As no express contract is alleged, plaintiff must rely on an implied contract. This implied contract, moreover, must be implied in fact as opposed to a quasi-contract or one implied in law. *United States v. Mutual Investment Co.,* 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911 (1926); *United States v. Willis,* 164 F.2d 453 (4th Cir. 1947); *Knight Newspapers, Inc. v. United States,* 395 F.2d 353 (6th Cir. 1968). The Supreme Court has defined an implied in fact contract as one "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R. R. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 426, 67 L.Ed. 816, 818 (1923). *Accord, Porter v. United States,* 496 F.2d 583, 590, 204 Ct.Cl. 355 (1974); *Algonac Manufacturing Co. v. United States,* 428 F.2d 1241, 1245, 192 Ct.Cl. 649 (1970). The essence of an implied in fact contract is mutual agreement and an intent to become obligated to another party where the agreement has not been expressed in words. See 1 S. Williston, A Treatise on the Law of Contracts § 3 (3d ed. 1957). Under the facts alleged in the complaint and argued in the briefs of counsel, this Court concludes that no implied in fact contract exists between the parties. There is no allegation or even an inference that the United States agreed or promised to pay for services provided by Fairfax County. Indeed, the United States has traditionally rejected such claims. *See* Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States, Part II, pp. 186–88 (1956). In light of the State's retention of concurrent jurisdiction over the land, such a position is not unreasonable. *See* Code of Virginia § 7.1–13 (1950). The disallowance of the Tucker Act claim for services provided does not, however, preclude their recovery as an element of damages should plaintiff succeed on its nuisance claim. Having offered no alternative basis for jurisdiction over the claim for reimbursement against either the federal or District of Columbia defendants, defendants' motion to dismiss Count IV as a separate action must be granted.

An appropriate order will issue.

---

15. 28 U.S.C. § 1346 provides in pertinent part:
 (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: . . .
 (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Having resolved plaintiff's constitutional claims on the basis of standing this Court expresses no opinion as to whether those claims are cognizable under the Tucker Act.