**CITY OF ALAMEDA, Plaintiff,**

v.

**TODD SHIPYARDS CORPORATION and Does I through X, Defendants.**

**TODD SHIPYARDS CORPORATION, Cross-Complainant,**

v.

**CITY OF ALAMEDA, United States of America, and Does XI through C, Cross-Defendants.**

**No. C 85–2789 SC.**

United States District Court, N.D. California.

June 6, 1986.

## ORDER RE MOTIONS TO RECONSIDER

CONTI, District Judge.

On March 25, 1986, the court entered an order denying cross-motions for summary judgment and denying the motion of the United States to be dismissed, 632 F.Supp. 333. The State of California and the City of Alameda move the court to reconsider its order. The court denies this motion. The United States also moves the court to reconsider its order. The court denies this motion in part and grants it in part. The court also directs the parties to file further affidavits and further briefing.

The State of California and the City of Alameda advance three arguments for reconsideration. First, the State of California argues that the statutory grant to the City of Alameda so limited the City's power, that the State must have intended to

create a defeasible estate. The court has already considered and rejected this argument. The grant statute and the deeds do not contain any language establishing a reversion to the State or to the City.

Second, the State of California argues that the statute of limitations does not apply to actions involving tidelands. The court did not rely on the statute of limitations in its decision. Therefore the State's argument cannot compel reconsideration.

■ Third, the State of California argues that as a matter of law Todd Shipyards cannot acquire title by equitable estoppel. *City of Long Beach v. Mansell*, 3 Cal.3d 462, 490, 91 Cal.Rptr. 23, 476 P.2d 423 (1970) holds that in a land title case the party seeking estoppel must show conduct amounting to constructive fraud. The court in *Long Beach* found such conduct, and Todd Shipyards may attempt to show it here. *Long Beach* does not bar a finding of estoppel against the government in a case involving tidelands. It holds:

> The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel.

■ The State of California argues that Todd Shipyards had a duty to review the deeds and granting statutes in its chain of title. The State asserts that these documents put Todd on notice that the United States lacked power to sell the land to a private party. The court does not grant summary judgment on this basis. The documents are complex. Whether or not they gave Todd actual or constructive notice of the sale restrictions is a question for trial.

The court reaffirms that Todd may seek to establish an estoppel defense at trial.

The United States advances two arguments for reconsideration. First, the Unit-

ed States contends that the Acts of the California legislature authorized the City to grant the land to the United States free of public trust restrictions. The court has already considered and rejected this argument. The court has determined that the legislature intended public trust restrictions to apply to the United States.

The United States now suggests that the court's determination conflicts with the Supreme Court's statement in *Surplus Trading Co. v. Cook*, 281 U.S. 647, 650, 50 S.Ct. 455, 456, 74 L.Ed. 1091 (1930).

> It is not unusual for the United States to own within a state lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the state. On the contrary, the lands remain part of her territory and within the operation of her laws save that the latter cannot affect the title of the United States or embarass it in using the lands or interfere with its rights of disposal.

The United States does not spell out its argument. The court determines that the dictum in *Surplus Trading* does not change the result in this case. In the present case, unlike *Surplus Trading*, the state consented to convey land to the United States subject to restrictions.

■ The dictum in *Surplus Trading* rests on Article I, Section 8, Clause 17 of the United States Constitution. This clause provides that Congress has authority to exercise exclusive legislation over "all places purchased by the consent of the legislature of the state ... for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." Where, as here, a state legislature gives consent for the United States to purchase land for the stated purposes, Congress gains authority to exercise exclusive legislation over these lands.

The United States takes jurisdiction of such lands subject to restrictions in the deed or granting statute, however. *Graham v. Brewer*, 295 F.Supp. 1140, 1142 (N.D.Ala.1968). The land remains subject

to those state laws in effect at the time of the transfer of jurisdiction. *Board of Supervisors of Fairfax County, Virginia v. United States,* 408 F.Supp. 556, 563–64 (E.D.Va.1976), *dismissed,* 551 F.2d 305 (4th Cir.1977). In the present case, Congress has not acted to remove the restrictions that applied to California tidelands when the United States acquired the land. Thus the court rejects the United States's first argument.

■ Second, the United States argues that it acquired a portion of the lands by condemnation, and that this portion is free of the public trust restrictions. The complaint in condemnation stated that the United States sought to condemn full fee simple title subject only to easements for existing public utilities. Todd Shipyards Exhibit H, ¶ 2. A condemnation proceeding founds a new title and obliterates all previous interests. *Burkhart v. United States,* 227 F.2d 659, 662 (9th Cir.1955).

■ By condemnation, the United States acquired both the *jus privatum* (the bare ownership interest) and the *jus publicum* (the public trust interest). The court affirms its agreement with the reasoning in *United States v. 1.58 Acres of Land, Etc.,* 523 F.Supp. 120 (D.Mass.1981). In *1.58 Acres of Land,* the district court stated that the United States could acquire full fee simple title to tidelands by condemnation.

[T]he United States may obtain full fee simple title to land below the low water mark without destroying the public trust which is administered by both the federal and state sovereigns.

523 F.Supp. at 122. The United States may not abdicate the role of trustee for the public when it acquires land by condemnation.

... we hold that the federal government may take property below the low water mark in full fee simple insofar as no other principal may hold a greater right to such land. It must be recognized, however, that the federal government is as restricted as the Commonwealth in its ability to abdicate to private individuals its *jus publicum* in the land. So restricted, neither the Commonwealth's nor the federal government's trust responsibilities are destroyed by virtue of this taking, since neither government has the power to destroy the trust or to destroy the other sovereign.

523 F.Supp. at 124–25. By condemnation, the United States simply acquires the land subject to the public trust as though no party had held an interest in the land before.

■ The United States acquired sole trusteeship of the condemned portion of the land. If this portion was subject to the action of the tides at the time of condemnation, then the United States acquired this portion subject to the public trust, and the United States may not convey this portion to a private party. *Illinois Central R. Co. v. Illinois,* 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892). If this portion of the land was not subject to the action of the tides at the time of condemnation, then the United States acquired this portion free of public trust restrictions, and the United States may convey this portion to a private party. Accordingly, the court grants in part the motion of the United States for reconsideration.

The court directs the parties to file affidavits so that the court may determine on summary judgment whether the condemned land was tidelands at the time of condemnation. In particular, the court directs Todd Shipyards and the United States to file: (1) a diagram of the parcel as it was at the time of condemnation; (2) a diagram of the parcel as it is now; and (3) a diagram of what the United States sold to Todd Shipyards. Each diagram shall show what portion of the land is subject to the action of the tides.

The court also directs the parties to address the issue of standing. The court has determined that the land will not revert to the City of Alameda or the State of California. Accordingly, the court directs the parties to address the following question: Do

the City of Alameda and the State of California now have standing in this action?

In accordance with the foregoing, it is hereby ordered that:

(1) the motion of the State of California and the City of Alameda for reconsideration is denied;

(2) the motion of the United States for reconsideration is granted in part;

(3) the court directs the parties to file affidavits to show whether the parcel was subject to the action of the tides at the time of condemnation. These affidavits shall be filed by July 11, 1986; and

(4) the court directs the parties to address the issue of standing. Each party shall file a memorandum of not more than 10 pages by July 11, 1986. Any reply memorandum shall be filed by July 25, 1986.