# Richmond.

## H. M. WRIGHT v. CITY OF RICHMOND.

April 22, 1926.

1. WATERS AND WATERCOURSES—*Municipal Corporations—Adoption of General Plan of Drainage—Action by Citizen for Insufficient Drainage for a Particular Road—Duties of Municipal Authorities—Quasi Judicial.*—The duties of the municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a *quasi* judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon consideration affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land.

2. WATERS AND WATERCOURSES—*Flooding Lands—Obstructing Natural Watercourse—Insufficient Culvert.*—No person or corporation has a right to construct a culvert over a natural watercourse in such a manner as to obstruct the flow of the stream and throw its water back on another owner's property to its injury; and the culvert or opening must be sufficient to accommodate not only the natural and normal flow of the stream, but such abnormal and excessive flow as may be reasonably anticipated in times of high water and flood. There is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an "act of God."

3. WATERS AND WATERCOURSES—*Municipal Corporations—Liability of City—Insufficient Culvert.*—Notwithstanding that the duties of municipal authorities in adopting a general plan of drainage are of a *quasi* judicial nature, it does not follow that because a city has caused to be constructed a culvert, sewerage system or what not, it is thereby exempt from liability, however faulty may be the construction, or negligent the city in its selection of the men who must decide the highly technical questions involved in any general plan of drainage, sewerage, or other municipal improvement. At most, these questions are to be decided upon proper instructions after evidence has been submitted bearing upon that inquiry.

4. WATERS AND WATERCOURSES—*Municipal Corporations—Flooding*

*Lands—Contract with a Landowner Waiving Claims Against a ity Arising out of the Extension of a Street—Case at Bar.*—The instant case was an action by a landowner against a city for the flooding of plaintiff's lands due to an insufficient culvert across a natural watercourse. Plaintiff's predecessor in title had released the city from all claims arising from the extension and grading of the street adjacent to and abutting upon the property.

*Held:* That while this release had the effect of releasing the city from all damages to the grantor from extending and grading the street, as might naturally be expected to follow, assuming the work was done with reasonable skill and in the usual and ordinary manner, yet, it was not intended to relieve the city of damages resulting from the negligent execution, construction or maintenance of the work.

5. STREETS AND HIGHWAYS—*Construction and Maintenance—Ministerial Duty.*—The construction or maintenance of a street is a ministerial duty for the improper discharge of which an action will lie.

6. MUNICIPAL CORPORATIONS—*Action for Negligence Against Municipal Corporation—Notice of Injury—Case at Bar.*—The charter of the city of Richmond, section 198, provided that notice of damage shall be filed with the city attorney within six months after the injury as a prerequisite to an action for the injury. The instant case was an action for damage to the plaintiff's land due to an insufficient culvert. The first overflow of plaintiff's land took place August 26, 1922. There was a subsequent overflow on July 30, 1923. Defendant contended that the cause of action arose August 26, 1922.

*Held:* That plaintiff might waive the damages suffered by the first flooding of his land and that his failure to give proper notice to the city operated as such waiver as to that particular item of damage, but did not affect his right to redress for subsequent wrongs, of which he alleges the city was continually being notified after the insufficiency of the drainage had been demonstrated.

7. WATERS AND WATERCOURSES—*Obstructions—Permanent Character of the Obstruction—One or Several Actions for Damages.*—An inadequate culvert laid under a street over a natural watercourse, built for present and future use, may be assumed to have been constructed with a view to its permanency and its obstruction to the flow of water is of that permanent character that should be compensated for in one action.

Error to a judgment of the Circuit Court of the city of Richmond, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Reversed and remanded.*

The opinion states the case.

*Geo. L. Oliver* and *Thos. I. Talley*, for the plaintiff in error.

*James E. Cannon* and *L. F. Cary*, for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

Motion for judgment brought against the city of Richmond and judgment for defendant. Plaintiff brings error.

Plaintiff in error, who was also the plaintiff in the circuit court, on February 4, 1924, brought his action for the purpose of recovering from the defendant as a result of damages claimed to have been sustained because of the negligent construction of a culvert under Carlisle avenue in the city of Richmond, where the same crosses a natural stream running in the rear of plaintiff's house. The house of plaintiff fronts on Government road, the first floor of the house being below the level of the street or road, and a deep ravine running in the rear of the house along which passes a considerable volume of water, especially after a heavy rainfall, is crossed by Carlisle avenue.

Before the city opened the avenue, which runs north and south, and put in the fill across the ravine, it entered into an agreement with Mrs. Maggie M. Geffert, the then owner of said lot of the plaintiff, with reference to said construction work, and the release of the city from all damages growing out of the construction of the roadway across the ravine. The part of the contract bearing upon the question at issue in this case is:

"All claim against the city of Richmond is hereby waived arising from the extension and grading of Carlisle avenue adjacent to and abutting my property."

In December, 1919, the city extended Carlisle avenue across the valley running back of plaintiff's home, and in so doing threw up an embankment bringing its level on grade with Government road. The water, seeking its natural drain, was provided for by a culvert which was, according to the pleadings, sufficient for the normal flow of water, but plainly insufficient to take care of such rainfalls as frequently occur in summer and as should be reasonably anticipated and guarded against.

The defendant filed its special plea to the motion, and vouched the deed from the plaintiff's predecessor in title containing the release clause above quoted, to which the plaintiff demurred. This demurrer was sustained and the parties went to trial with a jury on the merits, but the jury, being unable to agree, were discharged. At a later date the defendant again moved the court to overrule the plaintiff's demurrer to the "plea of release heretofore filed herein" at which time the same was overruled, the plea of release sustained, and the plaintiff's motion dismissed.

The sole question presented by the bill of exceptions is whether or not the waiver in the deed of Mrs. Geffert of November 28, 1919, is broad enough to exempt the city from damages caused by the overflow of plaintiff's land as a result of an insufficient culvert under the embankment constructed across the ravine— a natural water course.

In *Johnston* v. *District of Columbia*, 118 U. S. 20, 6 S. Ct. 924, 30 L. Ed. 75, Mr. Justice Gray, in discussing the powers, duties and obligations of municipal authorities in dealing with questions similar to the one under consideration, says:

[1] "The duties of the municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a *quasi* judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon consideration affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land." To the same effect is the *City of Atlanta* v. *Trussell*, 21 Ga. App. 340, 94 S. E. 651.

These and other authorities enunciating the same principle of law have been with great confidence relied upon by the city as an all sufficient answer to the plaintiff's demand. The law as announced in this line of cases and in the textwriters as well, is too firmly engrafted into our jurisprudence to be open to discussion, but the application of the doctrine to the facts in this case is a matter about which there may very readily be differences of opinion.

The question before us is not one of determining how far a city may be liable in adopting a general plan of drainage, sewerage, construction of culverts, or other general municipal undertakings. It may be noted, however, in passing, that the notice alleges not only that the defendant was negligent in the manner in which the drain was constructed, but after full knowledge of the insufficiency of the apperture under the street, and of the recurring damage to plaintiff's property as a result thereof, it did nothing to remedy the defect or abate the nuisance.

It would seem, therefore, that the language of the

court in *Richmond* v. *Cheatwood*, 130 Va. 83, 107 S. E. 833, is strikingly applicable to the facts set out in the motion in this case:

[2] "The law is perfectly well settled that no person or corporation has a right to constuct a culvert over a natural water course in such a manner as to obstruct the flow of the stream and throw its water back on another owner's property to its injury; and the culvert or opening must be sufficient to accommodate not only the natural and normal flow of the stream, but such abnormal and excessive flow as may be reasonably anticipated in times of high water and flood. There is no duty to provide for floods so unusual and extraordinary as to bring them within the category of an 'act of God'."

[3] It does not necessarily follow that because a city has caused to be constructed a culvert, sewerage system or what not, it is thereby exempt from liability, however faulty may be the construction, or negligent the city in its selection of the men who must decide the highly technical questions involved in any general plan of drainage, sewerage, or other municipal improvement. At most, these questions are to be decided upon proper instructions after evidence has been submitted bearing upon that inquiry.

[4, 5] Coming now to a consideration of the true intent and meaning of the language "all claim against the city of Richmond is hereby waived arising from the extension and grading of Carlisle avenue adjacent to and abutting my property." We have no difficulty in deciding that the waiver, in legal contemplation of the parties when this deed was executed, extended to and had the effect of releasing the city from all such damages resulting to the grantor from extending and grading the street or avenue across her property, as might naturally

be expected to follow, assuming that the city would do its work in the usual and ordinary manner, and with reasonable skill.

It was never intended, we think, to relieve the city of damages resulting from the negligent execution, construction or maintenance of the work. This was a ministerial duty for the improper discharge of which an action will lie. 28 Cyc. 1315.

It seems to us, therefore, that the court erred in overruling the plaintiff's demurrer to the defendant's plea of release and the case must be remanded to be tried on its merits in accord with the views herein expressed.

[6] Defendant in error contends that this action cannot be maintained because of the failure of the plaintiff to file with the city attorney a notice of the damage sustained by reason of the overflow of the land on August 26, 1922, within six months thereafter, as provided in section 198 of the city charter. There was a subsequent overflow on July 30, 1923, with reference to which the city was properly notified, but defendant contends that the cause of action arose August 26, 1922, and being permanent in character must date from the first damage resulting from the faulty construction of the drain and consequent obstruction of the watercourse causing the alleged damage. We think this position unsound.

If the plaintiff is willing to overlook the damages he suffered by the first flooding of his land, or such as may be caused by any subsequent overflows, it is his privilege to do so, and his failure to give the proper notice to the city of his intention to demand compensation for the damages sustained, operates as a waiver as to that particular item of damage, but does not affect his right to redress for subsequent wrongs, of which he alleges the city was continually being notified after the insufficiency of the drainage had been demonstrated.

[7] Counsel for both sides in their briefs have requested the court to pass upon the question of whether or not the obstruction to the flow of water is to that permanent character that should be compensated for, if at all, in one action, or does each backing of the water over the plaintiff's land create the occasion for a separate cause of action?

The culvert which gives rise to this litigation is laid under one of the streets, built for present and future use, and we may assume is constructed with a view to its permanency, and, while the authorities are in almost hopeless confusion when they attempt to lay down rules as to what are obstructions permanent in their nature, this case we think is controlled by *Southern Railway Company* v. *White*, 128 Va. 551, 104 S. E. 865.

"It may be argued that there is a substantial difference of fact between the cases in which waters are continuously polluted, or lands are perpetually overflowed by backwater from a dam, and a case like the one in judgment in which the overflows are recurrent and of short duration. The same principle of liability is appropriate to all cases where the nuisance is permanent and a constant and continuous agency of injury. Under the test of actual trial, the inadequacy of the culvert in the instant case was established. It is the proven efficient cause of overflows upon the lands affected. Under the weather conditions on the watershed of the Hardware river, these overflows, due to defendant's culvert, will occur with certainty though at uncertain intervals. The liability to overflow for which defendant is responsible has introduced a new element of uncertainty, an added risk in the cultivation of the lands in question. This uncertainty of return, the chances that the crop pitched will not be harvested, are shown to have affected the market

value of the plaintiff's lands. The offending cause is the defendant's culvert. It is an established permanent nuisance, the consequences of which in the normal course of things will continue indefinitely.

"The trial court was plainly right in holding that all damages could be collected in one action, and in directing the jury, in response to an inquiry from one of its members as to whether a verdict in the case for permanent damage to land would cover damage to land and crops in future, that such a verdict would cover such damages, and no other suit for damages could be brought by either of the plaintiffs, their heirs, assigns, or successors." *Southern Railway Company* v. *McMenamin,* 113 Va. 131, 73 S. E. 980.

For the reasons stated, we are of opinion that the judgment should be set aside and a new trial awarded to the plaintiff to be conducted in a manner not in conflict with the views herein expressed.

*Reversed and remanded.*