ADAMS, Harry, Agney, Robert N., Aker, Brenda A., Aker, John R., Akers, Allen, Akers, Geneva, Albert, Jane, Albert, Larry K., Albert, Ryoks B., Alderman, Mitchell, Alexander, Claborne, Alger, Gloria, Alley, Randsom D., Allison, Harold, Altizer, Clinton, Amos, Sparrell, Anders, Richard, Andrews, Gene F., Austin, John, Bane, Lewis, Beasley, Ellen M., Bell, Benjamin H., Bell, William A., Bishop, Billy M., Blake, Robert C., Boland, Felix, Boothe, Fayette, Boothe, Garland J., Boyshaw, John, Broce, Cecil R., Brown, James E., Broyles, Jr., Audney B., Buckland, Harvey T., Buckner, Cleven J., Buckner, Edna, Burcett, Douglas F., Burks, Peggy, Caldwell, Carolyn, Carpenter, Walter F., Carroll, Donald E., Cecil, Paul E., Charlton, Annie, Chinault, Robert E., Chrisley, Jerry W., Clark, Elmer L., Clemmons, Clarence J., Cooke, Paul, Cole, Stanley L., Conner, Hattie C., Cook, Jean B., Cox, Sr., William E., Craig, Jr., Herbert, Crawford, Earl S., Crockett, Richard, Crockett, Frederick, Crosier, Donald, Crump, Iris, Cumbee, Gilbert, Dalton, Elden, Dalton, James, Darnell, Larry G., Davidson, Alphonso, Dickerson, Bobby, Dobbins, Douglas, Doss, Sr., Larry, Dowdy, Robert M., Dowell, Thomas S., Dunagan, William, Duncan, Sr., Billy Gene, Duncan, Charles, Duncan, Darrell Lee, Duncan, Linda C., Dunford, George, Dunford, Lee Roy, Dunn, Jackie, Eagle, Harold, Edwards, Walter, Honaker–Elliott, Mary, Epperly, Nancy J., Estep, Larry F., Fain, Early D., Fisher, James K., Flanagan, Homer R., Fleeman, James L., Frye, John T., Gallimore, Gary, Gallimore, Ramsey, Gardner, Cleve T., Gibson, Laura, Giles, Lewis E., Goad, Wiley E., Good, Sr., Lawrence T., Gravely, Bolen E., Griffin, James, Griffin, Zelmer B., Grimes, Thomas, Grimm, Hubert W., Grubb, Jr., John, Hagee, Harold G., Hagy, Richard D., Hall, James G., Hall, Rosa N., Hancock, Jr., Larry, Harless, James P., Hash, Harold D., Hawkins, Calvin, Henley, Troy, Hetherton, Tobie E., Hicks, Larry Joe, Hill, James R., Hobart, C. W., Hinkle, William D., Sr., Holmes, Percy, Jr., Hopkins, Jerry, Hubbard, Robert, Hubbard, Ronald L., Huff, Daniel, Huff, Wayne M., Hutchins, Argel, Hutchins, John G., Hypes, Billy R., Ingo, Gussie L., Jimenez, Horace A., Johnston, Daniel, Jones, Glinna F., Jones, Hester H., Jones, Lyman J., Jr., Jordan, Richard, Kemp, Richard, Kerns, Jessie L., Kimleton, Gracie, King, Mary K., King, John K., Jr., Kinzer, Henry B., Kirk, Harold R., Kittinger, James R., Kroll, Charles B., Kyle, Sam J., Lawrence, James W., Lefew, Archie, Lester, Thompson V., Jr., Lester, Thomas D., Likens, Williams, Lindsay, Henry C., Linkous, Ross, Long, Marvin L., Lucas, Dickey A., Lucas, William L., Martin, Carl K., Martin, David, Martin, Gerald, Martin, Peggy Ann, Martin, William L., McClanahan, James, McCraw, Tomas, Sr., McCraw, Thomas H., Jr., McGrady, James E., McKinney, Sara J., Meade, Billy, Medley, Robert, Miller, Lewis, Miller, Lonnie J., Miller, William, Mills, Nelson, Minnick, Donald, Mitchell, Henry L., Mitchell, Darnell, Mitchell, J. B., Jr., Morehead, Vincent, Morgan, Marie, Morrison, Davies, Moser, Harvey, Myers, John H., Nester, Olen G., Nixon, Anthony, Nofsinger, Reggie, Nolen, Trigg M., Jr., Nunley, Samuel E., Ogle, Lancelot, Pagan, Homer D., Jr., Parker, Bobby L., Parson, Bertha S., Patterson, Macceo, Porter, Walter

H., Powers, Carl E., Primm, Clinton E., Quesenberry, Eddie, Quesenberry, Harry, Quesenberry, Roger, Rader, Terry, Ratcliff, Freddie R., Reed, Jean K., Reynolds, James M., Riffey, William E., Jr., Riley, Margaret S., Roberts, Joe N., Robertson, John L., Robinson, John, Robinson, Douglas L., Rosenbaum, Alfred D., Sarver, Alvin, Sarver, Evelyn J., Sarver, Herman L., Scott, Eleanor V., Self, John G., Self, Johnnie Lee, Shelton, Edmond L., Shepherd, Everett, Sherpard, Frank T., Shupe, Cecil T., Shupe, Edsel T., Simerly, Worley E., Simmers, Garnett, Simmons, Richard H., Simpkins, Charles, Simpkins, James, Simkins, Rivto P., Slather, Ronald L., Slaughter, Nathaniel, Slaugher, Richard, Smith, Estel C., Smith, Jerry O., Smith, Pearleane T., Smith, Spracher, Jr., Smith, Lynn, Snyder, William, Soloman, Romey R., Spradlin, Sylvia C., Stables, Cecil M., Stafford, Albert M., Jr., Steele, Fred L., Stone, Champ, Stone, Donald, Stoots, Robert C., Jr., Strader, Lowell P., Jr., Stock, Donald F., Stroupe, Sidney H., Sumner, Carroll M., Sutton, John, Taylor, Charlie A., Taylor, Roy E., Thompson, Betty L., Thompson, Kenneth, Thompson, Roger, Thompson, Emett, Thompson, William D., Thornton, Donald A., Tickle, Kenneth H., Tickle, Lewis N., Truehart, George L., Turman, Hardy Leon, Turner, Emory H., Jr., Turpin, Cecil W., Umberger, Gene, Umburger, Edgar, Vaugh, John R., Vaught, Maury, Vest, Thurman R., Viars, Harry W., Jr., Viars, Olan W., Wade, James C., Wade, Jane, Wade, Owen T., Walker, Quincy, Walls, Charles R., Weavers, John T., Weddle, Allen, Werner, Doris, Whitaker, Ronald, White, Marion D., Whitlock, Ordie, Whitt, Charles D., Wilson, Edward F., Wilson, Gordon, Wilson, Willie Andrew, Wolford, A. W., Woolwine, Luther, Workman, Roy, Worth, Barry, Wright, Gay, Plaintiffs,

v.

ALLIANT TECHSYSTEMS, INC., and Hercules, Inc., Defendants.

Nos. CIV.A.7:99CV00813, CIV. A.7:02CV00135 to CIV.A.7:02CV00138, CIV.A.7:02CV00140 to CIV. A.7:02CV00146, CIV.A.7:02CV00148 to CIV.A.7:02CV00151, CIV. A.7:02CV00153 to CIV.A.7:02CV00163, CIV.A.7:02CV00165 to CIV. A.7:02CV00187, CIV.A.7:02CV00189 to CIV.A.7:02CV00199, CIV. A.7:02CV00446, CIV.A.7:02CV00200, CIV.A.7:02CV00203 to CIV. A.7:02CV00206, CIV.A.7:02CV00208 to CIV.A.7:02CV00228, CIV. A.7:02CV00230 to CIV.A.7:02CV00233, CIV.A.7:02CV00235 to CIV. A.7:02CV00242, CIV.A.7:02CV00244 to CIV.A.7:02CV00256, CIV. A.7:02CV00258 to CIV.A.7:02CV00260, CIV.A.7:02CV00262 to CIV. A.7:02CV00271, CIV.A.7:02CV00273, CIV.A.7:02CV00274, CIV. A.7:02CV00276 to CIV.A.7:02CV00286, CIV.A.7:02CV00288 to CIV. A.7:02CV00292, CIV.A.7:02CV00294, CIV.A.7:02CV00296 to CIV. A.7:02CV00298, CIV.A.7:02CV00301 to CIV.A.7:02CV00312, CIV. A.7:02CV00314 to CIV.A.7:02CV00321, CIV.A.7:02CV00323 to CIV. A.7:02CV00337, CIV.A.7:02CV00339 to CIV.A.7:02CV00345, CIV. A.7:02CV00347 to CIV.A.7:02CV00355, CIV.A.7:02CV00357 to CIV. A.7:02CV00374, CIV.A.7:02CV00376 to CIV.A.7:02CV00381, CIV. A.7:02CV00383 to CIV.A.7:02CV00386, CIV.A.7:02CV00388 to CIV. A.7:02CV00399, CIV.A.7:02CV00402 to

CIV.A.7:02CV00411, CIV. A.7:02CV00413, CIV.A.7:02CV00415 to CIV.A.7:02CV00436, CIV. A.7:02CV00438 to CIV.A.7:02CV00445.

United States District Court,
W.D. Virginia,
Roanoke Division.

May 7, 2002.

John Gregory Webb, Gary Wheeler Kensall, Michie, Hamlett, Lowry, Rasmussen & Tweel, Charlottesville, VA, Charles Richard Cranwell, Cranwell, Moore & Bullington, PLC, Roanoke, VA, Reuben A. Guttman, Brian P. McCafferty, Charles V. Fifth, Provost & Umphrey, Washington, DC, Brent Coon, Provost & Umphrey Law Firm, LLP, Beaumont, TX, for Plaintiffs.

Linda Davis Frith, Nancy Fuller Reynolds, Frith, Anderson & Peake, PC, Roanoke, VA, for Defendants.

## MEMORANDUM OPINION

WILSON, Chief Judge.

These are personal injury suits by plaintiffs, employees or former employees at the Radford Army Ammunition Plant ("Arsenal"), against defendants, Alliant Techsystems, Inc. ("Alliant") and Hercules Incorporated ("Hercules"), for hearing loss plaintiffs allegedly suffered while working at the Arsenal. The court has federal question jurisdiction under 28 U.S.C. § 1331 because these suits arise out of a federal enclave.[1] Earlier, the court certified potentially dispositive worker's compensation related questions to the Supreme Court of Virginia. Based on that court's answers to the certified questions, *Adams v. Alliant Techsystems, Inc.*, 261 Va. 594, 544 S.E.2d 354 (2001), this court denied defendants' motion to dismiss.[2] The cases are now before this court on defendants' motion for summary judgment on various grounds. Defendants contend that the Arsenal is a federal enclave not subject to state tort law; that they are entitled to immunity as government contractors; that the Labor Management Relations Act, 29 U.S.C. § 185 preempts plaintiffs' claims; that plaintiffs' claims have not accrued under the Virginia Workers' Compensation Act; that the statute of limitations bars plaintiffs' claims; and that plaintiffs cannot establish "fraudulent concealment" to toll the statute of limitations. For the reasons stated below, the court denies defendants' motion for summary judgment on all grounds except one-the statute of limitations. The court finds that the statute of limitations bars the twenty-

---

1. Plaintiffs allege diversity jurisdiction under 28 U.S.C. § 1332. However, as this court later explains, since these claims arise out of a federal enclave they are subject to the court's federal question jurisdiction under § 1331.

2. The Supreme Court of Virginia had decided that a job related impairment resulting from cumulative trauma caused by repetitive motion, including gradually incurred industrial hearing loss, was a noncompensable injury under the then existing terms of the Virginia Workers' Compensation Act. *See The Stenrich Group v. Jemmott*, 251 Va. 186, 467 S.E.2d 795 (1996), *Allied Fibers v. Rhodes*, 23 Va. App. 101, 474 S.E.2d 829 (1996). In response, the General Assembly amended the Act to include hearing loss as a compensable injury. *See* Va.Code § 65.2-401. This amendment became effective July 1, 1997. When the plaintiffs filed their action in this court, the court certified two questions of state law regarding the effect of this amendment to the Supreme Court of Virginia. In response, the Supreme Court of Virginia held that the Act did not bar a plaintiff from bringing a common-law cause of action to recover damages for his or her hearing loss resulting from cumulative trauma if the claim accrued during the period in which the hearing loss was not a compensable injury or disease under the Act and that if an alleged impairment is not compensable under and not barred by the Act, the plaintiff need not file a claim with the Workers' Compensation Commission before bringing a common law negligence suit. *Adams*, 544 S.E.2d at 357. Since the plaintiffs claimed that their common-law causes of action accrued before July 1, 1997, the court denied defendants' motion to dismiss.

two cases listed in Appendix A to the court's opinion and bars all claims against Hercules.

## I.

In December 1940, Hercules contracted with the United States Department of War, now the Department of the Army, to construct and operate the Radford Army Ammunition Plant ("Arsenal"). In April 1942, the Commonwealth of Virginia ceded all jurisdiction over the Arsenal to the United States, except jurisdiction to serve process. In March 1995, Alliant assumed the contract between Hercules and the Army to operate the Plant. During defendants' respective tenures operating the Arsenal, government contracts and regulations governed working conditions, including noise levels, at the Arsenal and the products manufactured there.

In May 1952, Hercules entered a collective bargaining agreement ("CBA") with the United Gas, Coke & Chemical Workers Union which represented most of the hourly workers at the Arsenal. In June 1956, Hercules entered a CBA with the Oil, Chemical & Atomic Workers Unions, now the Paper, Allied–Industrial, Chemical & Energy Workers International Union, which has represented most of the hourly workers since that time. The CBAs require defendants to implement and enforce safety guidelines, and an employee who believes his employer is requiring him to work under conditions which are not in compliance with these safety guidelines may file a grievance under the CBA. (*See* Def.'s Mem. in Supp. of Summ. J., Ex. D–110, Section XIV)

Plaintiffs allege that defendants negligently exposed them to excessive noise, causing them to suffer partial or total hearing loss. On July 1, 1997, plaintiffs filed suit in state court in Minnesota, claiming loss of hearing because of defendants' negligence. The Minnesota court dismissed that action on the grounds of *forum non conveniens* on the condition that defendants "waive defenses involving . . . statutory limitations which did not exist in Minnesota as of July 1, 1997." (Def.'s Mem. in Supp. of Summ. J., Ex A) On November 19, 1999, the plaintiffs filed a single action in this court alleging the same claims which this court severed for trial management purposes.[3]

## II.

Defendants maintain that the Arsenal is located on a federal enclave which shields it from state common law claims. In one respect the argument is technically correct. Since Virginia ceded jurisdiction over the property to the United States in 1942 except for service of process, personal injury claims arising from the Arsenal are federal claims, not state claims. *Stokes v. Adair*, 265 F.2d 662, 665 (4th Cir.1959) (when exclusive jurisdiction is ceded state laws "lose their character as laws of the state and become laws of the Union.").[4]

---

**3.** Defendants moved to dismiss based on the Virginia Workers' Compensation Act. After certifying questions of state law to the Supreme Court of Virginia and receiving its answers, this court denied defendants' motion. Defendants then moved for the court to abstain, or alternatively to stay the proceedings, which the court also denied. Plaintiffs then moved to amend their complaint to join thirty-nine additional plaintiffs, and defendants moved to dismiss all but one plaintiff or, alternatively, to sever the plaintiffs. The court denied plaintiffs' motion to amend and defendants' motion to dismiss and granted defendants' motion to sever. The court then consolidated the claims for discovery purposes.

**4.** Personal injury claims arising on such an enclave are subject to the court's federal question jurisdiction. *See Stokes*, 265 F.2d at 665–66 (federal district courts have jurisdiction over actions between citizens of the same state for personal injuries arising on federal

And were it not for 16 U.S.C. § 457, "only the state laws in effect at the time of a transfer of jurisdiction [would] continue in effect." *Stokes* at 665. However, § 457 adopts state laws on a *continuing* basis for wrongful death and personal injury actions:

> In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

16 U.S.C. § 457.

Therefore, the Arsenal's situs in no way "shields" defendants from plaintiffs' substantive claims.

### III.

Defendants contend that as government contractors they are entitled to governmental immunity. In *Westfall v. Erwin*, 484 U.S. 292, 295–97, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the Supreme Court recognized an absolute immunity from state law tort liability for federal officials exercising discretion while acting within the scope of their employment.[5] In such situations, federal common law displaces state tort law and governs the scope of civil liability for federal officials performing their duties. *See Caudill v. Blue Cross and Blue Shield of North Carolina*, 999 F.2d 74, 78 (4th Cir.1993). Courts have extended *Westfall* immunity to private government contractors "in the narrow circumstances where the public interest in efficient government outweighs the costs of granting such immunity." *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442, 1447 (1996); *see also Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). "Even though private persons under contract with the government act only partly in the public sphere, the public interest may demand that immunity protect them to the same extent that it protects government employees." *Mangold*, 77 F.3d at 1447.

■ In *Boyle*, the Supreme Court articulated a two-part test for determining when federal common law displaces state tort law.[6] First, the matter must involve a "uniquely federal interest." *Boyle*, 487 U.S. at 507, 108 S.Ct. 2510. Second, there

---

enclave). State workmen's compensation claims, however, are not personal injury claims under 16 U.S.C. § 457. Nor do state workmen's compensation laws become federal laws on federal enclaves by virtue of § 457. *See Murray v. Joe Gerrick & Co.*, 291 U.S. 315, 54 S.Ct. 432, 78 L.Ed. 821 (1934). Instead, 40 U.S.C. § 290 empowers the states to apply workmen's compensation laws to federal enclaves.

**5.** Congress superseded the *Westfall* test by passing the Federal Employees Liability Reform and Tort Compensation Act, also known as the Westfall Act, which eliminated the requirement that the acts be discretionary. *See* 28 U.S.C. § 2679(d). "However, the *Westfall* test remains the framework for determining when nongovernmental persons or entities are entitled to the same immunity." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 72 (1998) (citing *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1446–50 (4th Cir.1996)).

**6.** In *Boyle*, the Court noted: "We refer here to the displacement of state law, although it is possible to analyze it as the displacement of federal-law reference to state law for the rule of decision." 487 U.S. at 508 n. 3, 108 S.Ct. 2510.

must be a "significant conflict" between the federal interest or policy and the operation of state law, or the application of state law must frustrate specific policy objectives of federal legislation. *Id.*

In *Boyle,* the plaintiff brought a wrongful death action under Virginia law in federal court against a helicopter manufacturer after his son, a United States marine pilot, died in a helicopter crash in waters near Virginia Beach. *Id.* at 502, 108 S.Ct. 2510. The plaintiff argued that the manufacturer defectively designed the escape hatch, making it impossible to exit the helicopter when it was submerged. *Id.* at 503, 108 S.Ct. 2510. The government contract, however, controlled the specifications of the escape hatch. *Id.* at 509, 108 S.Ct. 2510. The Court recognized that "the procurement of military equipment by the United States was an area of uniquely federal interest." *Id.* at 507, 108 S.Ct. 2510. The Court also noted that since the government contract provided detailed specifications for the escape hatch, there was a "significant conflict" between the state law and the federal interest. *Id.* at 509, 108 S.Ct. 2510.[7] Accordingly, the court found the helicopter manufacturer immune from the claim.

The Court, however, was careful to distinguish circumstances in which federal common-law immunity would not protect the manufacturer:

If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

*Id.*

Here, the production of munitions for the Army is uniquely a federal interest. However, Virginia's personal injury law, which 16 U.S.C. § 457 makes applicable, does not conflict with that interest. Defendants have not demonstrated that the duty of care defendants owe their employees conflicts with or even burdens defendants' federal regulatory or contractual obligations.[8] Defendants, therefore, have not shown that the circumstances in this case even remotely resemble the circumstances in *Boyle, Yearsley,* and *Mangold,* which involved significant conflicts between state law and the federal interests.

In *Schrader v. Hercules, Inc.,* 489 F.Supp. 159 (W.D.Va.1980), a Virginia resi-

7. Specifically, the court held that state laws imposing liability for design defects in military equipment present a significant conflict with a federal interest and must be displaced when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." 487 U.S. at 512, 108 S.Ct. 2510.

8. Charles Gardner, former Safety Director at the Arsenal, stated in his affidavit that Hercules and Alliant were contractually obligated to

follow Department of the Army regulations, TB MED 251 and TB MED 501, which mandated educational programs informing employees about hearing loss, noise levels and preventative measures to avoid hearing loss. (*See* Mem. in Supp. of Def.'s First Summ. J. Mot., Ex. C.) Defendants claim that they "have not been at liberty to stray from the Army hearing conservation regulations," (Reply Mem. in Supp. of Def.'s First Summ. J. Mot.) These regulations, however, do not "significantly conflict" with the duty of care imposed by Virginia's personal injury laws.

dent sued Hercules for injuries alleged to have resulted from an explosion caused by Hercules' negligence at the Radford Army Arsenal. *Id.* at 160. As in this case, Hercules claimed that it was entitled to a derivative sovereign immunity defense. *Id.* The court, however, found Hercules' argument without merit. *Id.* The court acknowledged that "an individual is not liable for carrying out the sovereign's will." *Id.* at 161. "[I]f the government has a right to have certain work performed then 'it has the right to employ servants to do the work, and those servants cannot be sued where they act strictly in the line of their employment executing the orders of the United States.' " *Id.* (citation omitted). A "non-governmental party's negligence," however, "is not subject to the defense." *Id.* Instead, derivative sovereign immunity is available " 'when the incidental injury is the necessary and unavoidable consequence of doing the work (or) ... when the work cannot be done without inflicting the injury.' " *Id.* (citing *Converse v. Portsmouth Cotton Oil Refining Corp.*, 281 F. 981, 984 (4th Cir.1922)).

In this case, defendants have not established that plaintiffs' hearing loss was "the necessary and unavoidable consequence" of manufacturing munitions for the Army or that "the work cannot be done without inflicting the injury." Since defendants have not demonstrated that plaintiffs' injury occurred solely by reason of carrying out the sovereign's will, the court will deny their claim of governmental immunity.

#### IV.

Defendants contend § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempts plaintiffs' claims. "While there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question,

§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights the state may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 408–410, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Section 301 preempts rights and obligations that are dependent on the contract. Since the court finds that plaintiffs' claims are independent of and require no interpretation of their collective bargaining agreements, § 301 does not preempt them.

The preemptive reach of the LMRA and the Railway Labor Act ("RLA") are virtually identical, *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), and the Supreme Court has held that "the enactment by Congress of the [RLA] was not a preemption of the field of regulating working conditions themselves ...." *Terminal Railroad Assn. of St. Louis v. Trainmen*, 318 U.S. 1, 6–7, 63 S.Ct. 420, 87 L.Ed. 571 (1943). Thus, according to the Supreme Court, "[i]t is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion." *Atchison, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 564–65, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). According to the Court, "[p]rinciples of federalism demand no less caution in finding that a federal statute pre-empts state law." *Hawaiian Airlines, Inc.*, 512 U.S. at 259 n. 6, 114 S.Ct. 2239.

■ Strictly speaking, plaintiffs' argument is not a preemption argument. Plaintiffs' claims arise out of a federal enclave-an arsenal subject to exclusive fed-

eral legislative jurisdiction. Their claims are federal claims based on a federal statute, 16 U.S.C. § 457, that adopts state law. Practically speaking, however, the question is essentially the same. Did Congress intend the LMRA to occupy the field of work place safety to the exclusion of other remedies? The court finds that the Supreme Court has, for all intents and purposes, answered that question. As the Court made plain in *Hawaiian Airlines,* the preemptive reach of the LMRA and the RLA are virtually identical. It follows that since the Supreme Court has found no indication that Congress intended for the RLA to preclude personal injury suits under the FELA for workplace injuries, *Buell,* 480 U.S. at 564–65, 107 S.Ct. 1410, it likewise would find no indication that Congress intended for the LMRA to preclude personal injury suits under 16 U.S.C. § 457 for workplace injuries. Accordingly, this court finds that § 301 of the LMRA does not preclude these suits.

## V.

■ Defendants argue that the Virginia Workers' Compensation Act bars plaintiffs' claims because plaintiffs have not established that their claims accrued before July 1, 1997—the effective date of the amendments to that Act allowing recovery for repetitive injuries.[9] Defendants' argu-

ment misplaces the burden. Although the Virginia Workers' Compensation Act bars hearing loss claims that accrued on or after July 1, 1997, the burden is on the defendants to show that the Virginia Workers' Compensation Act applies. Unless defendants can show that plaintiffs' injuries arose on or after July 1, 1997, the Virginia Worker's Compensation Act is irrelevant.[10] Since they have not done so, they are not entitled to summary judgment on this ground.

## VI.

■ Defendants assert that Virginia's two-year statute of limitations for personal injuries under Virginia Code § 8.01–243 bars the claims of many of the plaintiffs.[11] Plaintiffs contend that defendants agreed as a condition of the *forum non conveniens* dismissal of the Minnesota suit not to assert a statute of limitations defense or other procedural bar not available in Minnesota. According to plaintiffs, this court must apply Minnesota's six-year statute of limitations. The court finds that defendants entered an enforceable agreement not to assert a statute of limitations defense or other procedural bar not available in Minnesota. The court, nevertheless, concludes that Virginia's two-year statute of limitations applies.[12]

9. *See* footnote 2.

10. For this argument defendants rely on the Virginia Workers' Compensation Act definition of accrual. The appropriate question, however, is when did plaintiffs' common-law claims accrue. More particularly, when does a negligence action for personal injuries accrue under Virginia Code § 8.01–230. Stated differently, the amendments to the Virginia Workers' Compensation Act are not retroactive. They do not divest plaintiffs of common-law claims that accrued before July 1, 1997.

11. It is not clear which plaintiffs' claims the defendants are challenging on the basis of the

statute of limitations. It is clear, however, that defendants have moved for summary judgment only in the cases filed in this court on November 9, 1999—cases the Minnesota court dismissed on December 31, 1997. Defendants have not moved for summary judgment in cases that were filed later. Indeed, the statute of limitations analysis might be different for plaintiffs who were not plaintiffs in the Minnesota suit.

12. Plaintiffs claim that defendants agreed to be bound by Minnesota's statute of limitations. However, defendants actually only agreed to waive "statute of limitations which did not exist in Minnesota as of July 1, 1997."

Although plaintiffs claim diversity jurisdiction pursuant to 28 U.S.C. § 1332 their claims arise out of a federal enclave subject to the exclusive legislative jurisdiction of the United States. Their claims are, in reality, federal questions subject to the court's federal question jurisdiction under 28 U.S.C. § 1331, and 16 U.S.C. § 457 prescribes the law state and federal courts must apply to personal injury actions arising out of that enclave: "... in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be." 16 U.S.C. § 457.

The statute has its own choice of law rule: the court must apply "the laws of the state within the exterior boundaries of which [the enclave] may be." *Id.* § 457; *see also Jenkins v. Whittaker Corp.*, 785 F.2d 720 (9th Cir.1986), *Burgio v. McDonnell Douglas Inc.*, 747 F.Supp. 865 (E.D.N.Y.1990), *Resnick v. Sikorsky Aircraft*, 660 F.Supp. 415 (D.Conn.1987). The statute does not except the surrounding state's statute of limitations or rules concerning the accrual of causes of action from the laws a forum court must apply. There is no indication from the plain language of the statute that a forum court is free to apply an outcome determinative law other than the law of the state surrounding the enclave. The Minnesota

court was bound to follow the statute and presumably would have followed it. Accordingly, Virginia's statute of limitations applies.[13]

The Virginia statute containing the applicable statute of limitations states: "Unless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, ... shall be brought within two years after the cause of action accrues." Va.Code § 8.01–243. Defendants argue that the court should calculate the statute of limitations from the date plaintiffs filed their claims in federal court—November 9, 1999. However, since defendants entered an enforceable agreement not to assert a statute of limitations defense not available to them in the Minnesota court, the court will calculate the statute of limitations from the date plaintiffs filed their claims in Minnesota—July 1, 1997. Therefore, if plaintiffs' cause of action accrued before July 1, 1995–two years before they filed suit in Minnesota—the Virginia statute of limitations bars their claims.

■ Next, the court must consider when plaintiffs' cause of action accrued. "A cause of action involves three essential elements, (1) a legal obligation of a defendant to a plaintiff, (2) a violation or breach of that duty or right, and (3) harm or damage to the plaintiff caused by the violation or

The Minnesota court required this condition in order to "place the parties in the same position in the alternative forum as they were in the original forum." (Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. A) Defendants agreed, therefore, to be bound by whatever statute of limitations was available to defendants in Minnesota state court, which is not necessarily Minnesota's statute of limitations.

13. In *Quadrini v. Sikorsky Aircraft*, 425 F.Supp. 81 (D.Conn.1977), the court held that § 457 did not incorporate the adjacent state's choice of law provision, but rather the court applied federal conflicts law, governed by

"significant relationship" test of the Restatements (Second) of Conflict of Laws § 145. *Id.* at 88. Other courts have criticized the *Quadrini* decision, *see Vasina v. Grumman Corp.*, 644 F.2d 112, 117–18 (2d Cir.1981), *Burgio*, 747 F.Supp. at 866–68, and this court does not accept its reasoning. The court notes, however, that even if federal conflicts law applied, the "significant relationship" test of the Restatement (Second) of Conflict of Laws § 145 would require the court to apply Virginia substantive law including Virginia's statute of limitations.

breach." *Joyce v. A.C. and S., Inc.*, 785 F.2d 1200, 1204 (4th Cir.1986). A cause of action does not accrue until all of these factors, including injury, are present, *see id.; Locke v. Johns–Manville Corp.*, 221 Va. 951, 275 S.E.2d 900, 904 (1981), and the date of injury, not the date of discovery, controls. Virginia Code § 8.01–230 specifically states that "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person ... and not when the resulting damage is discovered." As this court has stated before:

> Virginia does not follow a "discovery rule" in applying the statute of limitations. The date that plaintiff discovers the injury is immaterial .to the running of the statute. The statute of limitations begins to run at the date of injury even if no diagnosis was made or communicated to the plaintiff until later.

*Smith v. Danek Medical, Inc.*, 47 F.Supp.2d 698, 701 (W.D.Va.1998).[14]

 Furthermore, "Virginia courts have long applied the rule that, for purposes of the statute of limitations, there is but a single, indivisible cause of action for all injuries sustained, whether or not all of the damage is immediately apparent." *Joyce*, 785 F.2d at 1204. "Once a cause of action is complete and the statute of limitations begins to run, it runs against all damages resulting from the wrongful act, even damages which may not arise until a future date." *Brown v. American Broad-*

*casting Co.*, 704 F.2d 1296, 1300 (4th Cir. 1983). Defendants have the burden to prove facts necessary to establish an application of the statute of limitations. *Locke*, 275 S.E.2d at 905 (Va.1981).

 In this case, twenty-two plaintiffs, identified in Appendix A, have not worked at the Arsenal since before July 1, 1995, (*see* Def. Mem. in Supp. of Summ. J., Ex. D), more than two years before they filed suit. They have not argued or presented evidence indicating that hearing loss due to excessive noise is the type of delayed injury that can manifest itself months or years after exposure to excessive noise. To the contrary, they presented evidence that "a person's hearing deteriorates with each exposure to impermissible levels of noise." (Pl.'s Mem. in Opp. to Summ. J. at 4, Dr. Powell). Thus, this case is not like the asbestos cases in which the injury date and exposure date may differ. *See Locke v. Johns–Manville*, 221 Va. 951, 275 S.E.2d 900 (1981). Rather, the exposure date is also the injury date. Accordingly, since these plaintiffs were last exposed and injured before July 1, 1995, the two-year statute of limitations bars their claims.[15]

The statute of limitations also *may* bar the remaining plaintiffs claims. However, the evidence does not show when they last worked at the Arsenal or when they allegedly were last exposed to excessive noise. Although defendants have submitted affidavits of physicians suggesting that some

---

14. "The 'time plaintiff was hurt' is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty." *Locke*, 275 S.E.2d at 905 (Va.1981).

15. The Virginia's statute of limitations may bar *all* plaintiffs' claims against Hercules because Hercules has not operated the Arsenal since March 1995—more than two years from

the date of the first filed suit. (Def.'s Mem. in Supp. of Summ. J., Ex. C). In their summary judgment motion, however, defendants only argued that the statute of limitations barred the claims of eighty plaintiffs. Unless defendants file an additional summary judgment motion, the court at this juncture can dismiss only the claims against Hercules of the eighty plaintiffs identified in defendant's Memorandum in Support of Summary Judgment.

of these plaintiffs suffered hearing losses before July 1, 1995 (*See* Def. Mem. in Supp. of Summ. J., Ex. E, F, G, H, I, J, K), it is unclear from the record whether these plaintiffs allege later injurious exposures (exposures within the two-year statute limitations but before the July 1, 1997, effective date of the amendments to the Virginia Worker's Compensation Act). Assuming that defendants continued to negligently expose plaintiffs to excessive noise after July 1, 1995 causing additional injuries, plaintiffs conceivably could recover damages for those injuries. The Supreme Court of Virginia has held that "where injury results from a negligent act and the injury continues by reason of continued negligence, a recovery may be had for damages caused by the continuing negligence, although a cause of action based on the original negligent act is barred." *City of Richmond v. James,* 170 Va. 553, 567, 197 S.E. 416 (1938).[16] Thus, the statute of limitations might not bar their claims.

This rule does not conflict with the rule stated earlier that "[o]nce a cause of action is complete and the statute of limitations begins to run, it runs against all damages *resulting from the wrongful act,* even dam-

ages which may not arise until a future date." *Brown,* 704 F.2d at 1300 (emphasis added). Here, plaintiffs do not claim that their injuries result from one wrongful act, but from a series of wrongful acts. They claim that their post-July 1, 1995 hearing loss resulted from defendants' post-July 1, 1995 negligence. The Virginia statute of limitations would not bar those claims. *See Williams v. E.I. Dupont De Nemours and Co.,* 11 F.3d 464 (4th Cir.1993) (holding that since plaintiff claimed he was injured from each exposure to paint fumes and the record supported his claim that he was injured on the last day of the two-year period of the statute of limitations, the plaintiff's claim is not barred); *Wright v. City of Richmond,* 146 Va. 835, 132 S.E. 707 (1926) (holding that when the City negligently constructed a culvert which caused damage to plaintiff's land on two separate occasions, plaintiff's cause of action for damage from the second flood did not accrue on the date of the first flood damage).[17]

■ The court does not hold that defendants' alleged continuing negligence tolls the statute of limitations as was the case in *Farley v. Goode,* 219 Va. 969, 252

---

**16.** In *James,* the plaintiff suffered injury from inhaling gas fumes from a pipe which was left uncapped by the City of Richmond. *Id.,* 197 S.E. at 418. The City argued that the plaintiff's claim accrued when the City left the pipe uncapped, and that the plaintiff did not give the City notice of her injuries within sixty days of the accrual of her cause of action as required by the City Charter. *Id.* at 421. The Supreme Court of Virginia, however, held that "[t]he negligence of the city was more than the act of leaving the pipe uncapped.... It likewise consisted in the continuing act of furnishing gas through the pipe which its own employee had left in an unsafe condition, and of which it had knowledge." *Id.* The court held that plaintiff was entitled to damages, but that "the trial court properly limited the plaintiff's recoverable damages to compensation for such injuries as she had received

within sixty days of the date of her notice to the city." *Id.* at 422.

**17.** In *Wright,* the Supreme Court of Virginia stated:

If the plaintiff is willing to overlook the damages he suffered by the first flooding of his land, or such as may be caused by any subsequent overflows, it is his privilege to do so, and his failure to give the proper notice to the city of his intention to demand compensation for the damages sustained, operates as a waiver as to that particular item of damage, but does not affect his right to redress for subsequent wrongs, of which he alleges the city was continually being notified after the insufficiency of the drainage had been demonstrated.

132 S.E. at 709.

S.E.2d 594 (1979). The Supreme Court of Virginia limited the continuing negligence theory in *Farley* to professional relationships that required a continuation of service. *Id.*, 252 S.E.2d at 601. Instead, the court finds that the statute of limitations does not preclude plaintiffs from recovering damages for additional injuries for negligent conduct occurring after July 1, 1995, although the statute of limitations bars recovery for injuries occurring before that date.[18]

## VII.

Plaintiffs claim that the statute of limitations does not bar their claims because defendants fraudulently concealed information about their hearing loss. Plaintiffs allege that defendants' physicians and nurses failed to disclose to plaintiffs that noise at the Arsenal was causing their loss of hearing.[19] Under Virginia law, a defendant is equitably estopped from raising a statute of limitations defense when the defendant has obstructed the plaintiff from asserting his claim by fraudulently concealing the potential cause of action. *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 266 S.E.2d 887, 890 (1980).

[A] party seeking to invoke the doctrine of estoppel must prove, *by clear, precise, and unequivocal evidence* the following

elements: (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the fact; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; and (6) The party claiming estoppel was mislead to his injury.

*Id.*, 266 S.E.2d at 890 (emphasis added).

Here, in contrast, the evidence suggests, at most, that defendants negligently failed to advise plaintiffs that noise at the plant was causing hearing loss. Plaintiffs have not presented evidence that defendants intended to conceal the existence of an actionable injury. Furthermore, plaintiffs have not presented evidence that plaintiffs were ignorant of the truth of the matter. In fact, fifty-six plaintiffs had stated that they were aware that they were being "exposed to loud noises and high frequency noises." (Pls.' Mem. in Opp. to Summ. J., Ex. 1) In fact, defendants adduced medical records showing that plant physicians informed many of the plaintiffs about their hearing loss. (Defs.' Mem. in Supp. of Summ. J., Exs. E, F, G, H, I, J, K). Therefore, even in the light most favorable to plaintiffs, plaintiffs cannot establish, by clear precise and unequiv-

---

**18.** In *James* the Supreme Court of Virginia cited *Wright* and Corpus Juris for the following propositions:

Where the damages are continuing and the statute requires notice or presentation of claim within a specified time after the claim accrues, recovery can not be had for damages accruing more than the specified time prior to such notice or presentation. But failure to give notice of damages by flooding, due to the faulty construction of a culvert, does not preclude recovery of damages from subsequent flooding, of which timely notice was given.

*James*, 197 S.E. at 421.

**19.** Plaintiffs also claim that defendants concealed plaintiffs' hearing loss from the Commonwealth of Virginia by not filing a "First Report of Accident" with the Virginia Workers' Compensation Commission and concealed plaintiffs' hearing loss from the federal government by failing to record plaintiffs' occupational hearing loss in an OSHA 200 Log Book. The doctrine of equitable estoppel, however, only applies to prevent a statute of limitations defense when the defendants fraudulently conceal information from the plaintiffs. Concealment of information from state or federal agencies, therefore, does not establish equitable estoppel.

ocal evidence, the necessary elements for their fraudulent concealment claim. Therefore, Defendants are not equitably estopped from asserting the statute of limitations defense.

## VIII.

For the reasons stated above, the court will deny Defendants' motion for summary judgment except for the cases listed in Appendix A. The court will grant Defendants' motion for summary judgment in the cases listed in Appendix A because these Plaintiffs' claims are barred by the statute of limitations. Additionally, the court will grant summary judgment for Hercules in all of the plaintiffs' cases in which Hercules has moved for summary judgment based on the statute of limitations.

An appropriate order will follow.

### APPENDIX A

| | |
|---|---|
| ALTIZER, CLINTON EDWARD | 7:02CV00150 |
| AMOS, SPARRELL | 7:02CV00151 |
| BOLAND, FELIX | 7:02CV00162 |
| BOYSAW, JOHN WILLIAM | 7:02CV00166 |
| BUCKNER, CLEVEN J. | 7:02CV00171 |
| CLARK, ELMER L. | 7:02CV00182 |
| GOAD, WILEY E. | 7:02CV00232 |
| GRAVLEY, BOLEN E. | 7:02CV00235 |
| HAWKINS, CALVIN J. | 7:02CV00249 |
| HOLMES, PERCY, JR. | 7:02CV00256 |
| KING, JOHN KELLY, JR. | 7:02CV00280 |
| LINDSAY, HENRY C. | 7:02CV00292 |
| MARTIN, WILLIAM LLOYD | 7:02CV00305 |
| MILLS, NELSON A. | 7:02CV00317 |
| PAGAN, HOMER D. JR. | 7:02CV00334 |
| PORTER, WALTER H. | 7:02CV00339 |
| RIFFEY, WILLIAM ERNEST, JR. | 7:02CV00350 |
| ROBERTS, JOE NEAL | 7:02CV00352 |
| SHUPE, CECIL T. | 7:02CV00367 |
| SIMERLY, WORLEY E. | 7:02CV00369 |
| SLAUGHTER, RICHARD A. | 7:02CV00378 |
| THOMPSON, EMETT | 7:02CV00407 |
| WHITLOCK, ORDIE | 7:02CV00435 |